UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

JOHN PANARESE and LUIS LICEA,        Case No. 2:19-cv-3186

        Plaintiffs,
  v.                                   **COMPLAINT**

T3 MICRO, INC.,                      **(Trial by Jury Demanded)**

Serve:
Kent Yu
228 Main Street, Suite 1
Venice, CA 90291,

        Defendant.
-------------------------------------------------------X

      Plaintiffs JOHN PANARESE ("Plaintiff Panarese") and LUIS LICEA ("Plaintiff Licea") (collectively, "Plaintiffs") allege the following claims against Defendant T3 MICRO, INC. ("Defendant") as follows:

## INTRODUCTION

      1.    As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902,

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018). Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

1

at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2.      According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ("ADA"), almost three decades ago, as well as the enactment of California's Unruh Civil Rights Act. "Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.'" *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))). "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination.'" *Del-Orden*, 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national

---

[2] In 2016, an estimated 7.7 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1(last visited July 30, 2018). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.* "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available indiscriminately to other members of the general public***". *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

3. Plaintiffs are blind individuals who require screen reading software to read website content and access the internet. Defendant maintains its website, www.t3micro.com (the "Website"), in such a way that it contains numerous access barriers preventing Plaintiffs, and other blind and visually-impaired individuals, from gaining equal access to the Website. Defendant's denial of full and equal access to its website, and therefore its products and services offered thereby, is a violation of Plaintiffs' rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.*, of Plaintiff Panarese's rights under New York State Human Rights Law, N.Y. Exec. Law Article 15 ("NYSHRL"), and of Plaintiff Licea's rights under the California Unruh Civil Rights Act, California Civil Code § 51 *et seq.* ("Unruh Civil Rights Act").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §

1331 and 42 U.S.C. § 12188, for Plaintiffs' claims arising under the ADA.

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Panarese's claims under NYSHRL and Plaintiff Licea's claims under the Unruh Civil Rights Act.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

7. Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Eastern District of New York that caused injury and violated rights the ADA prescribes to Plaintiffs and to other blind and other visually impaired consumers. A substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in this District: most particularly, on several occasions, Plaintiff Panarese has been denied the full use and enjoyment of the facilities, goods and services appurtenant to the Website in Suffolk County. These access barriers that Plaintiffs have encountered, as set forth herein, have caused a denial of Plaintiffs' full and equal access multiple times in the past, and now deter Plaintiffs on a regular basis from accessing and purchasing products from the Website.

## THE PARTIES

8. Plaintiff John Panarese resides in Hauppauge, Suffolk County, New York. Plaintiff Luis Licea resides in San Bernardino County, California. Plaintiffs are permanently blind and use screen readers in order to access the internet and read website content. Despite several attempts to use and navigate the Website, Plaintiffs have been denied the full use and enjoyment of the facilities and services of the Website as a result of accessibility barriers on the Website. The access barriers on the Website have caused a denial of Plaintiffs' full and equal access multiple times in

4

the past, and deterred Plaintiffs on a regular basis from accessing Defendant's website.

9. While Plaintiffs genuinely want to avail themselves of Defendant's goods and services as offered on Defendant's website, Plaintiffs have a dual motivation: they are also "testers," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011). Indeed, it is widely accepted that "testers" such as Plaintiffs advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Plaintiffs have filed multiple lawsuits against various operators of commercial websites under the Unruh Civil Rights Act as part of their advocacy work on behalf of the civil rights of visually-impaired persons. Plaintiffs intend to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial website and others are fully and equally enjoyable to and usable by visually-impaired persons, including themselves.

10. Plaintiffs are informed and believe, and thereon allege, that Defendant T3 Micro, Inc., is a California corporation with its principal place of business located in Venice, California. Plaintiffs are informed and believe, and thereon allege, that Defendant owns, operates and provides to the public the Website. The Website provides access to Defendant's array of products and services, including descriptions of its products, amenities and services, a store locator for Defendant's products, an online shop, and many other benefits related to its products and services. The Website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) (*see Andrews v. Blick Art Materials, LLC,* 268 F.Supp.3d 381, 391-398 (E.D.N.Y. 2017)

5

(retailer's website was a place of public accommodation under the ADA, and thus retailer was prohibited from discriminating against visually impaired consumers on website)), and likewise is a place of public accommodation within the meaning of the NYSHRL, and is a "business establishment" within the meaning of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* The Website is a service, privilege, and advantage and accommodation of Defendant's services.

## FACTS

11. The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

12. Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen. Screen access software provides the only method by which a blind person may independently access the internet. Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services, privileges, advantages, and accommodations contained thereon.

13. The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established, industry standard guidelines for ensuring websites are accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that

image maps are accessible, and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

14. Defendant offers the Website, which provides, as set forth above, a breadth of information concerning its products and other amenities and services, privileges, advantages, and accommodations.

15. Based on information and belief, it is Defendant's policy and practice to deny blind users, including Plaintiffs, equal enjoyment of and access to the Website. Due to Defendant's failure and refusal to remove access barriers on the Website, Plaintiffs and other blind and visually impaired individuals have been denied equal enjoyment of and access to Defendant's services, advantages, privileges, and accommodations offered to the public through the Website.

16. Defendant has denied blind individuals equal enjoyment of and access to the products, services, privileges, advantages, and accommodations and information made available through the Website by preventing them from freely navigating the Website. The Website contained access barriers that prevented free and full use by Plaintiffs and other blind persons using screen reading software.

17. The Website's barriers are pervasive and include, but are not limited to, the following: (1) Empty headings, or headings that contain no content. Some users, especially keyboard and screen reader users, often navigate by heading elements. An empty heading will present no information and may introduce confusion; (2) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users; and (3) Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader

users.

18. Due to the inaccessibility of the Website, blind and otherwise visually impaired customers who use screen readers have been hindered from effectively browsing for Defendant's products, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users. If the Website were accessible, Plaintiffs would independently and privately investigate Defendant's products, services, privileges, advantages, accommodations, and amenities, as sighted individuals can and do.

19. Despite several attempts to access the Website in recent months, the numerous access barriers contained on Defendant's website have denied Plaintiffs' full and equal access, and deterred Plaintiffs on a regular basis from accessing the Website. Similarly, based on the numerous access barriers contained on the Website, Plaintiffs have been deterred from purchasing Defendant's products as Plaintiffs would have been able to do by using the Website. Plaintiffs continue to attempt to utilize the Website and plan to continue to attempt to utilize such Website in the near future. Plaintiffs' dignitary interests as disabled persons have been harmed by Defendant's actions.

## CAUSES OF ACTION

### COUNT I
### Violations of the ADA
### (By Plaintiffs Against Defendant)

20. Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

21. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

22. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a).  In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

23. Defendant's Website constitutes a "public accommodation" within the meaning of

42 U.S.C. § 12181 *et seq.* Defendant generates millions of dollars in revenue from the sale of its products and services, privileges, advantages, and accommodations through its Website. The Website is a service, privilege, advantage, and accommodation provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiffs. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public. Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that Defendant denies visually-impaired customers the services, privileges, advantages, and accommodations provided by the Website. These violations are ongoing.

24.    Defendant's actions constitute intentional discrimination against Plaintiffs on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* in that: Defendant has constructed a website that is inaccessible to Plaintiffs; knowingly maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

25.    Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## COUNT II
## Violations of the NYSHRL
## (By Plaintiff Panarese Against Defendant)

26.    Plaintiff Panarese incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

27.    N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability of any person, directly or

indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

28. Defendant's Website is a public accommodation, service, privilege and/or advantage of Defendant within the meaning of the NYSHRL.

29. Defendant is subject to NYSHRL because it owns and operates a public accommodation, its Website, which is generally accessible and available in the state of New York. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

30. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to its Website, causing its Website to be completely inaccessible to the blind and visually-impaired. This accessibility denies blind and visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disable public.

31. Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden."

32. Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

33. As set forth above, the international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established, industry standard guidelines for ensuring websites are accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader. By contrast, incorporating these basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

34. Defendant's actions constitute willful intentional discrimination against Plaintiff Panarese on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that Defendant: has constructed and maintained a Website that is inaccessible to Plaintiff Panarese with knowledge of the discrimination; and/or constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to Plaintiff Panarese; and/or failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff Panarese.

35. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

36. Defendant discriminates, and will continue in the future to discriminate, against Plaintiff Panarese on the basis of disability in the full and equal enjoyment of its products, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website

under § 296(2) *et seq.* and/or its implementing regulations. Unless this Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff Panarese will continue to suffer irreparable harm.

37. Defendant's actions were and are in violation of the New York State Human Rights Law and, therefore, Plaintiff Panarese invokes his right to injunctive relief to remedy the discrimination.

38. Plaintiff Panarese is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

39. Plaintiff is also entitled to reasonable attorneys' fees and costs.

40. Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Panarese prays for judgment as set forth below.

## COUNT III
### Violations of the Unruh Civil Rights Act
### (By Plaintiff Licea Against Defendant)

41. Plaintiff Licea incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

42. California Civil Code § 51 *et seq.,* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq*.

43. The Website is a "business establishment" within the meaning of the California Civil Code § 51 *et seq.* Defendant generates hundreds of thousands of dollars in revenue from the sale of its goods and services in California through the Website. The Website is a service provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiff Licea. This

inaccessibility has denied visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public. Defendant has violated the Unruh Civil Rights Act by denying visually-impaired customers the services and products provided by the Website. These violations are ongoing.

44. Defendant's actions constitute intentional discrimination against Plaintiffs on the basis of a disability in violation of the Unruh Civil Rights Act because Defendant has constructed a Website that is inaccessible to Plaintiff Licea, knowingly maintains the Website in this inaccessible form, and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

45. Defendant is also violating the Unruh Civil Rights Act because the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq.* Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

46. The actions of Defendant were and are in violation of the Unruh Civil Rights Act and, therefore, Plaintiff Licea is entitled to injunctive relief remedying the discrimination.

47. Plaintiff Licea is also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act and requiring Defendant to take the steps necessary to make the Website readily accessible to and usable by visually-impaired individuals.

48. Plaintiff Licea is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense. Plaintiff Licea is also entitled to reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

  A. For a judgment that Defendant violated Plaintiffs' rights under the ADA, 42 U.S.C. § 12181 *et seq.*, Plaintiff Panarese's rights under NYSHRL, N.Y. Exec. Law § 296, *et seq.,* and Plaintiff Licea's rights under the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*;

  B. For a preliminary and permanent injunction requiring Defendant to take the steps necessary to make the Website, www.t3micro.com, readily accessible to and usable by visually-impaired individuals;

  C. For compensatory and/or statutory damages as permitted by law;

  D. For Plaintiffs' reasonable attorneys' fees and court costs;

  E. For pre-judgment interest to the extent permitted by law; and

  F. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs, pursuant to Fed. R Civ. P. 38(b), hereby demand trial by jury.

        Respectfully submitted,

        JOHN PANARESE and LUIS LICEA

        /s/ Jacqueline E. Browder
        Jacqueline E. Browder, Esq. (NY 4585584)
        STRELKA LAW OFFICE, PC
        Warehouse Row
        119 Norfolk Avenue, S.W., Suite 330
        Roanoke, VA  24011
        Tel:  540-283-0802
        jacqueline@strelkalaw.com

        Scott J. Ferrell, Esq.
        Victoria Knowles, Esq.
        Pacific Trial Attorneys
        4100 Newport Place, Suite 800
        Newport Beach, CA 92660
        Tel: (949) 706-6464
        sferrell@pacifictrialattorneys.com
        vknowles@pacifictrialattorneys.com

        *Counsel for Plaintiffs*

Dated: May 29, 2019